[Crim. No. 3269.   First Dist., Div. Two.   Apr. 15, 1957.]

THE PEOPLE, Respondent, v. JOSEPH SILVESTRI, Appellant.

Nathan Cohn and Lawrence Shostak for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Arlo E. Smith, Deputy Attorney General, for Respondent.

KAUFMAN, P. J.—Defendant appeals from a judgment of conviction entered on a jury verdict finding him guilty of possessing heroin in violation of Health and Safety Code, section 11500.

At approximately 7:30 p. m. on January 4, 1956, the defendant, Joseph Silvestri was standing on the corner of First and Willow Streets, in San Jose, with his brother, Ralph Silvestri. Ralph Silvestri was ill and vomiting. This caught the attention of Police Officer Barnett who then approached the defendant and his brother and inquired who they were and what they were doing in San Jose. The defendant and his brother stated that they had come to San Jose to contract for decorating work with one Ragone. On their way back into town from Ragone's house the lights of their car went out. Therefore, they left the car at a service station at Second and Key Streets and planned to return to San Francisco by bus. Officer Barnett then left, but decided to check their car. When

he arrived at the service station at Second and Key Streets, he observed a traffic violator and went to cite him. After Officer Barnett left the defendant and his brother called a taxicab to take them to the bus depot. They had just entered the taxicab when they were accosted by Officers Ballard and Sims, and were again questioned. After telling Officers Ballard and Sims what they had told Officer Barnett, the defendant and his brother proceeded to the bus depot.

Officer Ballard testified that his reason for stopping the defendant and his brother was ''that they looked suspicious to us.'' Officer Ballard further testified that the Green Frog Market had been robbed on the evening of January 3, 1956, by a man who was described as ''Five eight, around 35 to 40, Italian or Portuguese descent, with pock marks on his face,'' and that in mentally checking this description, the defendant and his brother seemed to fit, although neither one had pockmarks. Officers Ballard and Sims also had information about a 1930 or 1934 grey Dodge coupé without license plates which had been used to ''case'' a Lucky Market on December 27, 1955. After questioning the defendant and his brother, the officers proceeded to check the defendant's car which was a 1936 grey or tan Dodge coupé with license plates. After looking at the car, the officers radioed Officer Barnett, informed him of the robbery of the Green Frog Market and agreed to meet him at the bus depot for further questioning of the defendant and his brother. First, the defendant and his brother were questioned in front of the bus depot by all three officers. Then, the defendant and his brother were questioned separately, as one of the officers believed there were discrepancies in their answers. Officers Sims and Ballard questioned the defendant and Officer Barnett questioned Ralph Silvestri. Officer Ballard testified that at this time he observed that the pupils of defendant's eyes were contracted and that this indicated to him that the defendant was possibly under the influence of a narcotic drug. The answers of the defendant and his brother caused the officers to feel that they were not telling the truth. After a cursory search for weapons, the defendant and his brother were apparently arrested without a warrant as robbery suspects and taken to the San Jose police station, the defendant was searched by Officer Ballard and an object later identified as a heroin capsule was found in a package of cigarettes belonging to the defendant. The defendant first denied any knowledge of the capsules in the cigarette package and then admitted that they contained heroin and that he had been using the drug for three years. The defendant was then

booked for possessing heroin in violation of section 11500, Health and Safety Code. On trial, the defendant pleaded not guilty. During the trial the only evidence introduced was that of the prosecution. The defendant made appropriate and timely objections to the introduction of testimony and evidence, and was overruled by the court. His contentions on appeal are as follows:

(1) The trial court erred in instructing the jury to determine whether there was reasonable cause for his arrest and search.

(2) The evidence admitted was obtained on illegal search and seizure as there was no reasonable cause for the arrest.

(3) The trial court erred in instructing the jury that if the defendant was under the influence of narcotics at the time of his arrest, he was committing an offense in the presence of an officer as there was no evidence on this point, and the defendant was not arrested on this ground.

Subsection (3) of section 836 of the Penal Code provides that an officer may make an arrest without a warrant when a felony has, in fact, been committed and he has reasonable cause for believing the person arrested to have committed it. ■ Reasonable cause has been defined as: ''such a state of facts as would lead a man of ordinary care and prudence to believe or entertain an honest and strong suspicion that the person is guilty.'' (*People* v. *Kilvington,* 104 Cal. 86 at 92 [37 P. 799]; *People* v. *Novell,* 54 Cal.App.2d 621 [129 P.2d 453]; *In re McCarty,* 140 Cal.App. 473 [35 P.2d 568].) ■ It is clear that the court looks only at the facts and circumstances presented to the officer at the time he is required to act. (*People* v. *Paul,* 147 Cal.App.2d 609 [305 P.2d 996]; *People* v. *Brown,* 147 Cal.App.2d 352 [305 P.2d 126]; *People* v. *Hupp,* 61 Cal.App.2d 447 [143 P.2d 84].)

The first instruction to the jury complained of was as follows: ''Now it's for you to determine whether or not the officer in taking the defendant into custody acted reasonably, did they have a reasonable ground for detaining him.'' The State argues that in this instruction the court was merely following the procedure in confession cases where the jury must be informed of the circumstances surrounding the confession in order to evaluate its probative value. ■ However, in disposing of the same argument in *People* v. *Gorg,* 45 Cal.2d 776, the court said at page 781 [291 P.2d 469]: ''The probative value of evidence obtained by a search or seizure, however, does not depend on whether the search or seizure was legal

or illegal, and no purpose would be served by having the jury make a second determination of that issue. █ Moreover, the legality of a search or seizure will frequently depend on whether the officer had reasonable cause to make an arrest, and since such cause is not limited to evidence that would be admissible at the trial of the issue of guilt' (*People* v. *Boyles, ante,* [45 Cal.2d], p. 652 [290 P.2d 535], and cases cited), evidence that was otherwise inadmissible and prejudicial would frequently be presented to them if the jury were required to pass on the legality of the search or seizure.''

In the instant case the only evidence against the defendant is that obtained by the search at the San Jose police station. Before the arrest and search the defendant's conduct was lawful, as in *People* v. *Sanders,* 46 Cal.2d 247 [294 P.2d 10]. █ If the search was unreasonable it cannot be justified by what it turns up. *People* v. *Brown,* 45 Cal.2d 640 [290 P.2d 528]. █ The reasonableness of the search and the arrest here depend on the existence of probable cause for arrest. Therefore, the above instruction which permitted the jury to determine the existence of probable cause was prejudicial to the defendant. This question should have been determined by the court as a question of law.

█ The second instruction complained of was as follows: ''If there was evidence that the defendant was under the influence of a narcotic in a public place in the presence of the officers, then that would be a public offense committed in his presence, wouldn't it?'' This instruction was likewise improper under the rule of *People* v. *Gorg, supra.*

In view of the erroneous instructions, it is not necessary to determine whether there was probable cause for the arrest in this case. We note however, that recently the matter of the legality of a search and seizure dependent on probable cause for arrest without a warrant under section 836, subdivision 3 of the Penal Code has been before our courts and in each case the issue of probable cause has been decided on its own facts and circumstances in accordance with the rule set forth in *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905], and subsequent cases. █ It is also clear that the defendant makes a prima facie case when he establishes that an arrest without warrant or search without warrant has been made, and the burden then rests on the prosecution to show proper justification. (*Badillo* v. *Superior Court,* 46 Cal.2d 269 [294 P.2d 23].)

In view of the foregoing the judgment must be reversed. Judgment reversed.

Dooling, J., and Draper, J., concurred.

A petition for a rehearing was denied May 15, 1957, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied June 12, 1957. Shenk, J., and Spence, J., were of the opinion that the petition should be granted.