PEEK, P. J.
 

 Defendant appeals from a judgment entered pursuant to a jury verdict finding him guilty of a violation of section 11530 of the Health and Safety Code (possession of
 
 *569
 
 marijuana), and from the order denying his motion for a new trial.
 

 At approximately 7 a. m. on February 4, 1961, Detectives Dunkeson and Warner of the Sacramento sheriff’s office, acting upon information which they had received from one Konald Moulton, went to defendant’s residence in Sacramento County for the purpose of arresting him on suspicion of burglary. Defendant occupied a sleeping room behind the garage on the premises. In response to the officer’s knock, a voice asked, “What do you want?”; when the officers asked for “Augie,” they were told to enter. Two men were in the room, one of whom identified himself as Augustine Calderon and who stated that he was also known as “Augie.” Defendant was informed that the officers were investigators from the Sacramento County sheriff’s office and that he was under arrest on suspicion of burglary. He was told to dress, but first to hand "his clothing to the officers for inspection. Defendant handed a sport shirt to one of the officers, stating that it was his: In the pocket of the shirt were found two marijuana cigarettes. Upon being questioned concerning the cigarettes, defendant replied that they were marijuana and that they belonged to him.
 

 Defendant was thereafter charged with the unlawful possession of marijuana and a prior conviction by United States courts-martial for a like offense, for which he served a term of imprisonment in the United States confinement facility at Mather Air Force Base, California.
 

 ■ On appeal, defendant first contends that the evidence was insufficient to sustain the conviction since it was not proven that he had knowledge of the narcotic nature of the substance found in his possession; that the substance was a narcotic; or that the offense occurred in Sacramento County.
 

 The evidence shows that the cigarettes taken from defendant were initialed by the officer at the time they were found. Two days later they were delivered to Mr. Kvick, a state chemist. It is undisputed that the narcotics were found in defendant's clothing, which fact alone justifies the inference of knowledge of their presence. Defendant, however, argues that evidence of the chemical quality of the cigarettes was insufficient because there was no testimony as to the nature of the chemical analysis, and therefore, the narcotic character of the cigarettes was not established. It is the rule that an expert need not state facts on which he bases his opinion when not requested to do so. (19 Cal.Jur.2d, Evi
 
 *570
 
 dence, § 299, p. 26.) Defendant’s counsel did not see fit to cross-examine the expert as to the nature of the analysis which he made or the basis of his opinion. Furthermore, defendant’s admission that the cigarettes were marijuana is sufficient.
 

 Also without merit is defendant’s contention that the corpus delicti was not established without recourse to his admissions and hence, the reception of his admissions in evidence was error. “ All that is needed to establish the corpus delicti of possessing narcotics in violation of the statute is to show a reasonable probability of unlawful possession by someone.”
 
 (People
 
 v.
 
 Lawton,
 
 186 Cal.App.2d 834, 836-837 [9 Cal.Rptr.
 
 122]; People
 
 v.
 
 Cuellar,
 
 110 Cal.App.2d 273 [242 P.2d 694].) The evidence previously summarized adequately meets this requirement without reference to the extrajudicial statements of the defendant.
 

 Defendant further contends that the cigarettes which were admitted into evidence were obtained by unlawful search and seizure. In this regard, the record shows that Moulton, the informant, had been arrested on the evening of February 3, 1961, on charges of robbery and possession of narcotics. At the time of his arrest, he was in possession of a gun which he stated he had found in a ditch. The officers identified the gun as one which had been stolen in a recent burglary of the home owned by one Gordon Winters. Winters, in his complaint of the burglary, had also listed a rifle and rifle scope as missing. When informed of these facts, Moulton admitted that he knew Winters, but stated he had nothing to do with the robbery. Moulton then stated that he had obtained the gun from the defendant, Calderon. When asked if Calderon had committed the burglary, Moulton answered he did not know, but they would find the stolen rifle and scope in Calderon’s room and that he, Moulton, had seen those items there. Moulton further informed the officers they would find narcotics in defendant’s room, or in the immediate vicinity of the door leading into the room, stating that he had seen narcotics there over the past months. He also stated that defendant was a constant holder of narcotics for another party; that he, Moulton, had purchased marijuana cigarettes from defendant; and that the cigarettes he then had in his possession had been purchased from Calderon.
 

 At a second interrogation, Moulton gave the officers a detailed description of defendant, his automobile, and the premises which he occupied. Officer Dunkeson testified that
 
 *571
 
 the information furnished by Moulton coincided with the information which he himself had acquired from various sources concerning the defendant over a period of time, and that narcotics had been delivered to defendant by one Gobel and stored by defendant. The officer also had information that Moulton was associated with Gobel and that the two of them were part of a group who associated together and smoked marijuana.
 

 When the officers arrived at defendant’s quarters they found the physical aspects of the premises to be exactly as described by Moulton. They also saw defendant’s automobile, likewise as described by him.
 

 Whether or not the officers had reasonable cause to arrest defendant for the crimes charged must necessarily depend upon the facts of each individual ease. Certainly the facts as above summarized were sufficient to lead a man of ordinary care and prudence to believe or entertain an honest suspicion that the defendant was guilty of the crime.
 
 (People
 
 v.
 
 Ingle,
 
 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577].) The fact that defendant was not arrested for any offense with reference to narcotics until after the search is unimportant.
 
 (People
 
 v.
 
 Tyler,
 
 193 Cal.App.2d 728 [14 Cal.Rptr. 610].) All of the evidence on this question was heard out of the presence of the jury and defense counsel agreed that the question of reasonable and probable cause was solely for the trial judge to determine. However, defendant now contends that the court erred in not submitting this question to the jury. Defendant appears to concede this rule, but urges that an exception must be made where there is a conflict in the evidence.
 

 The identical question was raised in the recent case of
 
 People
 
 v.
 
 Tyler,
 
 193 Cal.App.2d 728, 735 [14 Cal.Rptr. 610]. There the court held that “the existence of probable cause is a question of law.” (See also
 
 People
 
 v.
 
 Gorg,
 
 45 Cal.2d 776 [291 P.2d 469].) The reason for the rule, as stated in the
 
 Gorg
 
 ease, is that:
 
 *572
 
 [citing eases], evidence that was otherwise inadmissible and prejudicial would frequently be presented to them [sic] if the jury were required to pass on the legality of the search or seizure.” (P. 781.)
 

 
 *571
 
 “The probative value of evidence obtained by a search or seizure . . . does not depend on whether the search or seizure was legal or illegal, and no purpose would be served by having the jury make a second determination of that issue. Moreover, the legality of a search or seizure will frequently depend on whether the officer had reasonable cause to make an arrest, and since such cause is not limited to evidence that would be admissible at the trial of the issue of guilt
 

 
 *572
 
 Defendant contends that he was put in double jeopardy and was also denied his constitutional rights of due process and equal protection of the law, under both the United States and California Constitutions, because the present charge and conviction included the prior conviction by court-martial. He further challenges the constitutionality of that portion of section 11530 which relates to prior convictions under the laws of the United States. In addition, he alleges that the statute is unconstitutional in that it is so vague and uncertain it is not clear from its language whether a court-martial conviction is intended to be included; that it is void as an
 
 ex post facto
 
 law; and further, that the increase of punishment based upon conviction in the federal court is a violation of the doctrine of separation of powers.
 

 Defendant’s many arguments as to the constitutionality of a statute that enhances the punishment for a second offense are neither new or novel. (58 A.L.R. 20; 139 A.L.R. 673; Note 45 L.Ed. 542.)
 

 It is well established that statutes providing for an increased penalty for subsequent offenses are constitutional.
 
 (McDonald
 
 v.
 
 Massachusetts,
 
 180 U.S. 311 [21 S.Ct. 389, 45 L.Ed. 542];
 
 People
 
 v.
 
 Dutton,
 
 9 Cal.2d 505 [71 P.2d 218];
 
 People
 
 v.
 
 McDaniels,
 
 165 Cal.App.2d 283 [331 P.2d 450]:) They are not void as
 
 ex post facto
 
 laws
 
 (McDonald
 
 v.
 
 Massachusetts, supra; Ex parte Gutierrez,
 
 45 Cal. 429); nor do they infringe constitutional privileges against double jeopardy
 
 .(Graham,
 
 v.
 
 West Virginia,
 
 224 U.S. 616 [32 S. Ct. 583, 56 L.Ed. 917];
 
 People
 
 v.
 
 Millwood,
 
 150 Cal.App.2d 154 [309 P.2d 495]). They do not deny the equal protection of the laws or due process of law
 
 (Moore
 
 v.
 
 Missouri,
 
 159 U.S. 673 [16 S.Ct. 179, 40 L.Ed. 301];
 
 People
 
 v.
 
 Dutton, supra);
 
 nor do they impose a penalty on crimes outside the jurisdiction
 
 (McDonald
 
 v.
 
 Massachusetts, supr
 
 a).
 

 The fundamental mistake of defendant is his assumption that the judgment imposes a punishment on crimes for which he had already been convicted and punished. This is not the case, since the punishment is for the new crime only, although it is more severe where he is an habitual criminal. (See, for example,
 
 People
 
 v.
 
 Stanley,
 
 47 Cal. 113 [17 Am.Rep. 401];
 
 People
 
 v.
 
 Coleman,
 
 145 Cal. 609 [79 P. 283];
 
 Peo
 
 
 *573
 
 pie v.
 
 Biggs,
 
 9 Cal.2d 508 [71 P.2d 214, 116 A.L.R. 205].) It is also within the discretion of the Legislature to treat former convictions in another jurisdiction as having the like effect of imprisonment in its own state.
 
 (McDonald
 
 v.
 
 Massachusetts,
 
 180 U.S. 311 [21 S.Ct. 389, 45 L.Ed. 542]; Carlesi v.
 
 New York,
 
 233U.S. 51 [34 S.Ct. 576, 58 L.Ed. 843].)
 

 With respect to the vagueness of section 11530, defendant’s argument that it is not clear from the language whether a conviction by courts-martial is to be included can be answered by looking to section 11530 as it read prior to its 1961 amendment. The section as amended is inapplicable, since the case was tried and judgment entered prior to September 15,1961, the effective date of the amendment. Section 11530, prior to the 1961 amendment, read in part:
 

 “If such person (1959 Statutes) has been previously convicted of any offense under the laws ... of the United States which if committed in this State would have been punishable as an offense described in this division [div. 10], the previous conviction shall be charged in the indictment or information. ...”
 

 Defendant was charged with a prior conviction of the crime of wrongful possession of marijuana and wrongful use of marijuana by United States courts-martial. It has been established that a conviction by courts-marshal is to be accorded the same finality as a judgment of a civil court
 
 (United States
 
 v.
 
 Price,
 
 258 F.2d 918), and that a conviction by an Army general court-martial may be treated by state courts as a prior felony conviction under laws of another jurisdiction.
 
 (Grafton
 
 v.
 
 United States,
 
 206 U.S. 333 [27 S.Ct. 749, 51 L.Ed. 1084];
 
 People
 
 v.
 
 Benjamin,
 
 7 App.Div.2d 410 [184 N.Y.S.2d 1].)
 

 There can be no question that defendant’s prior conviction of wrongful possession of marijuana is a punishable offense under section 11530 of the Health and Safety Code. (See, for example,
 
 People
 
 v.
 
 Machado,
 
 180 Cal.App.2d 63 [4 Cal.Rptr. 110].)
 

 Furthermore, by withdrawal of his denial of the prior conviction, defendant admitted the prior conviction as charged in the information. But he claims that the information relating to the.prior conviction is so defective as not to give the court jurisdiction. He asserts that the failure to allege that the prior conviction occurred after the statute .providing additional penalties for subsequent offenses became effective constitutes a fatal defect. There is no California
 
 *574
 
 ease law or statutory law requiring such an allegation. Penal Code section 969 provides in part: “In charging the fact of a previous conviction of felony, ... it is sufficient to state ‘That the defendant, before the commission of the offense charged herein, was in (giving the title of the court in which the conviction was had) convicted of a felony ... [or insert the name of the offense].’ ” There was substantial compliance to the form as required by this section.
 

 Defendant also contends that there was no proof of venue. But as was held in
 
 People
 
 v.
 
 Mayfield,
 
 196 Cal.App.2d 72 [16 Cal.Rptr. 261], venue may be established by circumstantial evidence. Defendant was apprehended in Del Paso Heights by two officers of the Sacramento County sheriff’s office who were then on duty. It is presumed that they were acting within their official capacity within Sacramento County at the time they apprehended defendant.
 

 The judgment and order are affirmed.
 

 Schottky, J., and Pierce, J., concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied September 5, 1962.