[Crim. No. 4939.   First Dist., Div. One.   Nov. 1, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. ROGER J. HOLMES, Defendant and Appellant.

Morton Rible, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Paul N. Halvonik, Deputy Attorneys General, for Plaintiff and Respondent.

SULLIVAN, P. J.—A jury found defendant guilty of possession of marijuana. (Health & Saf. Code, § 11530.) He appeals from the judgment of conviction.[1]

On July 11, 1964 at about 4 a.m. defendant was in the vicinity of Fillmore and Ellis Streets in San Francisco on his way home from work. San Francisco Police Officers Byrd and Tyree, who were standing at the corner of the above streets, saw defendant about a quarter of a block away in front of a cafe. They observed that defendant and another man were moving in a circle and that the latter, later identified as Joe Johnson, had a sweater wrapped around his hand. According to Officer Tyree, defendant kept advancing toward Johnson "who had assumed a boxing stance, and was dancing away each time the defendant moved toward him. And it seemed as though the defendant had a weapon of some kind in his right hand." Both officers proceeded toward defendant. As they came closer they saw that defendant was holding an open pocket knife in his hand. When the officers were approximately 6 to 15 feet away from defendant, he closed the knife and put it in his right trouser pocket, although there is some conflict in their testimony as to whether defendant was facing them when they finally came up to him.

Without saying anything to defendant or asking any questions of anyone, both officers began to search him simultaneously. While Officer Byrd was giving defendant a "preliminary pat," Officer Tyree reached into defendant's right trouser pocket and removed the knife. The former continued "to pat the defendant down," and seeing a bulge in defendant's left trouser pocket, "I hit his left front pocket, and I felt this, so I ran my hand down, to see what it was. When it came out, it was a match box, so I saw this various stuff in the match box." The contents were later determined to be marijuana. Defendant was then placed under arrest.

At the conclusion of the prosecution's case in chief, the matchbox and marijuana were admitted in evidence over defendant's objection. The basis of the court's ruling was that the search which produced such evidence was legal as one

---

[1]Defendant also appeals from the order denying his motion for a new trial. Such order is nonappealable and the attempted appeal therefrom must be dismissed. (Pen. Code, § 1237; *People* v. *Justice* (1963) 211 Cal.App.2d 660, 662 [27 Cal.Rptr. 465].)

incidental to an arrest made upon reasonable cause and that the question of reasonable or probable cause was one for the determination of the court and not the jury. At the conclusion of all the testimony, the court again denied defendant's request to submit the question of reasonable or probable cause to the jury on appropriate instructions.

Defendant now raises the same issues before us on appeal. He contends (1) that the question whether there was reasonable cause for the arrest and search of defendant was one for determination by the jury on proper instructions; and (2) that in any event the arrest and search were not made upon reasonable cause. We have concluded that neither point has merit and that the judgment should be affirmed.

Defendant argues that, although in most instances, the evidence bearing upon reasonable cause is not in dispute and the issue is one of law, nevertheless where such evidence is in conflict so that reasonable cause is established under one version of the facts and precluded under another, the issue is one of fact which must be submitted to the jury under proper instructions.

However, it is now well settled that in a criminal case the question as to whether there is reasonable cause for an arrest and search, being one involving the admissibility of evidence, is a question of law to be determined by the court outside the presence of the jury. (Code Civ. Proc., § 2102; *People* v. *Gorg* (1955) 45 Cal.2d 776, 780-781 [291 P.2d 469]; *People* v. *Lawrence* (1957) 149 Cal.App.2d 435, 446-447 [308 P.2d 821]; *People* v. *Dewson* (1957) 150 Cal.App.2d 119, 126-127 [310 P.2d 162]; *People* v. *Ames* (1957) 151 Cal. App.2d 714, 723 [312 P.2d 111]; *People* v. *Tyler* (1961) 193 Cal.App.2d 728, 735 [14 Cal.Rptr. 610]; *People* v. *Calderon* (1962) 205 Cal.App.2d 566, 571 [23 Cal.Rptr. 62]; *People* v. *Swayze* (1963) 220 Cal.App.2d 476, 488 [34 Cal.Rptr. 5].) As respondent points out to us, it has been held to be reversible error to submit to the jury the question of reasonable or probable cause for arrest. (*People* v. *Silvestri* (1957) 150 Cal.App.2d 114, 118 [309 P.2d 871]; and see *People* v. *Ames, supra.*)

Defendant's argument that the above rule applies only when the facts are not in dispute, and not when they are in conflict, must fail. An identical argument was made and rejected in *People* v. *Tyler, supra,* and *People* v. *Calderon, supra.* In *Tyler,* as in the instant case, the defendant relied on *People* v. *Paul* (1957) 147 Cal.App.2d 609, 619 [305 P.2d 996],

where the court stated that the issue of probable cause is to be decided by the court only where there is no conflict in the evidence, citing *inter alia People* v. *Kilvington* (1894) 104 Cal. 86, 90-92 [37 P. 799, 53 Am.St.Rep. 73], also cited by defendant herein. In *Tyler,* Division Two of this court pointed out that ''the existence of probable cause is a question of law'' citing *People* v. *Gorg, supra.* (193 Cal.App.2d at p. 735.) In *Calderon,* the Third District Court of Appeal, in an opinion by Justice Peek, followed *Tyler* and also cited *Gorg.* It is to be noted that the situations arising in *Tyler* and *Calderon,* as in the instant case, the preliminary question confronting the court was one of admissibility of evidence, the introduction of which depended upon the legality of the arrest and search, which in turn rested upon a basis of probable cause. The following language from *Gorg* is therefore apposite: ''The probative value of evidence obtained by a search or seizure, however, does not depend on whether the search or seizure was legal or illegal, and no purpose would be served by having the jury make a second determination of that issue. Moreover, the legality of a search or seizure will frequently depend on whether the officer had reasonable cause to make an arrest, and since such cause is not limited to evidence that would be admissible at the trial of the issue of guilt [citation], evidence that was otherwise inadmissible and prejudicial would frequently be presented to them if the jury were required to pass on the legality of the search or seizure.'' (45 Cal.2d at p. 781.)

*Gorg* does not mention *People* v. *Kilvington* or *People* v. *Paul,* which are the mainstays of defendant's present argument, and neither *Tyler* nor *Calderon* discusses or distinguishes these cases. In our view, this was not an oversight. A comparison of *Gorg* and the cases following it on the one hand and *Kilvington, Paul* and the other cases relied upon by defendant herein clearly discloses that the issue of probable cause involved in the latter group of cases was cast in a different setting. None of these cases dealt with that issue as an integral part of a preliminary question on the admissibility of evidence and therefore as exclusively and strictly a question arising on an objection to the admission of evidence. On the contrary, *Kilvington* and cases cited therein involved situations where the question of probable cause was one of the *ultimate* issues in the case.[2] Therefore the cases upon

---

[2]See McCormick on Evidence, page 124 where the author, in discussing the province of the court to decide preliminary questions of fact, points out certain qualifications among which are ''cases in which it happens

which defendant relies, including *Kilvington* and *Paul*, as well as other cases following *Kilvington* are all distinguishable from the case at bench on this basis.[3]

We turn to inquire into the legality of the arrest and search of defendant. "An arrest without a warrant can only be legally made if the person arrested has committed a public offense in the presence of the arresting officer or if the arresting officer has reasonable cause to believe that the person arrested has committed a felony. (Pen. Code, § 836; *People* v. *Boyles,* 45 Cal.2d 652, 655 [290 P.2d 535]; *People* v. *Simon,* 45 Cal.2d 645, 648 [290 P.2d 531].)" (*People* v. *Privett* (1961) 55 Cal.2d 698, 701 [12 Cal.Rptr. 874, 361 P.2d 602]; *People* v. *Brice* (1965) 234 Cal.App.2d 258, 265 [44 Cal.Rptr. 231].) ▉ It is clear from the evidence summarized by us *supra* that the police officers saw defendant brandishing a knife and moving towards Johnson with the knife in hand. They could reasonably conclude from what they observed that defendant was in the act of assaulting Johnson. (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 557].)[4] ▉ Their search of Holmes was lawful as one incidental to a lawful arrest even though it occurred before rather than after the arrest. (*People* v. *Hammond* (1960) 54 Cal.2d 846, 853 [9 Cal.Rptr. 233, 357 P.2d 289]; *People* v. *Ingle, supra.*)

that the preliminary fact-question on which competency of evidence . . . depends is also one of the *ultimate disputed fact-issues* which the jury would normally decide." (Italics added.)

[3] *Grant* v. *Moore* (1866) 29 Cal. 644 (malicious prosecution); *Ball* v. *Rawles* (1892) 93 Cal. 222 [28 P. 937, 27 Am.St.Rep. 174] (malicious prosecution); *People* v. *Kilvington, supra,* 104 Cal. 86, 91 (murder charge against police officer attempting to arrest victim; whether homicide was excusable depended upon whether he had reasonable cause to believe a felony had been committed); *Franzen* v. *Shenk* (1923) 192 Cal. 572 [221 P. 932] (malicious prosecution); *Collyer* v. *S. H. Kress & Co.* (1936) 5 Cal.2d 175 [54 P.2d 20] (action for damages for false imprisonment and malicious prosecution in a shoplifting case); *Murphy* v. *Murray* (1925) 74 Cal.App. 726 [241 P. 938] (action for wrongful death arising out of attempted arrest of deceased by defendant police officer); *Miller* v. *Lee* (1944) 66 Cal.App.2d 778 [153 P.2d 190] (malicious prosecution); *Roberson* v. *J. C. Penney Co.* (1955) 136 Cal.App. 2d 1 [288 P.2d 275] (false imprisonment); *People* v. *Paul, supra,* 147 Cal.App.2d 609 (defendant charged with crime of escape, which offense rested on the lawfulness of the arrest).

[4] The learned trial judge observed: "The officers saw the defendant— accepting the testimony, and I do—either engaged in an assault, which would be a misdemeanor, being committed in their presence— . . . Or an assault with a deadly weapon, which would be a felony. In either event they have a right and duty to make the arrest. So we have a lawful arrest."

■ Defendant argues that since, under the decision in *Mapp. v. Ohio* (1961) 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933], the Fourth Amendment of the United States Constitution is made applicable to the states through the Fourteenth, a search cannot precede an arrest and that the instant search therefore contravenes Fourth Amendment standards of reasonableness. The argument has no merit. As stated in *Ker* v. *California* (1963) 374 U.S. 23, 31-34 [83 S.Ct. 1623, 10 L.Ed.2d 726] *passim*, "*Mapp*, however, established no assumption by this Court of supervisory authority over state courts [citation], and, consequently, it implied no total obliteration of state laws relating to arrests and searches in favor of federal law. *Mapp* sounded no death knell for our federalism; . . . *Mapp* did not attempt the impossible task of laying down a 'fixed formula' for the application in specific cases of the constitutional prohibition against unreasonable searches and seizures; it recognized that we would be 'met with "recurring questions of the reasonableness of searches" ' and that, 'at any rate,' "[r]easonableness is in the first instance for the [trial court] . . . to determine," ' . . ." (Pp. 31-32.) "The States are not thereby precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures. . . ." (P. 34.) Indeed *Ker* appears to have given confirmation to the views of our California Supreme Court previously[5] expressed in *People* v. *Mickelson* (1963) 59 Cal.2d 448, 451-452 [30 Cal.Rptr. 18, 380 P.2d 658]: "A state rule governing police procedure is not unconstitutional merely because it permits conduct in which a federal officer may not lawfully engage. . . . The United States Supreme Court has not interpreted the Fourth Amendment as requiring that court to lay down as a matter of constitutional law precise rules of police conduct. Indeed, its rule allowing a search by a federal officer without a warrant as incident to a lawful arrest permits reference to state law to determine the validity of the arrest. [Citations.] Accordingly, before a state rule governing police conduct may be struck down, it must appear that neither Congress nor a state legislature could authorize it. If a state adopts rules of police conduct consistent with the requirements of the Fourth Amendment and if its officers follow those rules, they do not act unreasonably within the

---

[5]*Mickelson* was decided April 18, 1963; *Ker* on June 10, 1963.

meaning of the amendment although different rules may govern federal officers.'' There is nothing in the instant record disclosing that federal constitutional criteria as to reasonableness have not been respected. (*Ker* v. *California, supra,* 374 U.S. 23, 34.) The mere fact that federal rules as to police conduct may preclude a search before arrest, though incidental thereto, does not mean that such criteria have not been respected.

The attempted appeal from the order denying defendant's motion for a new trial is dismissed. The judgment is affirmed.

Molinari, J., and Sims, J., concurred.