[Crim. No. 232.   Fifth Dist.   Mar. 22, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. EUGENE
FLOYD PHILLIPS, Defendant and Appellant.

Eugene Floyd Phillips, in pro. per., and Lawrence E. Wayte, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Philip R. Birney, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant, Eugene Floyd Phillips, and his sister-in-law, Katherine E. Phillips, were jointly charged with felonious assault as denounced by section 245 of the Penal Code; the crime was alleged to have occurred as follows: ". . . said EUGENE FLOYD PHILLIPS and KATHERINE PHILLIPS on or about the 14th day of July, A.D. 1965, at the County of Tulare, State of California, and before the filing of this Information, did willfully, unlawfully, and feloniously commit an assault upon the person of ROBERT GENE DANIELS by means of force likely to produce great bodily injury."

As to both defendants, the jury brought in a verdict of guilty, but since Katherine Phillips did not appeal, Eugene Floyd Phillips is the only appellant; he was denied probation and sentenced to state's prison.

The evidence is clearly sufficient to sustain the conviction. In fact, the appellant does not claim otherwise. His position on the appeal is that there were errors committed by the trial court, consisting chiefly of the admission of evidence as to what the victim told a police officer shortly after the assault, to justify that officer's action in breaking down the door of the room in which the defendants were believed to be and there obtaining evidence in the course of such fresh pursuit which was used by the state in the proof of its case.

The assault in question had its origin in drinking at public bars in the City of Visalia and its culmination in the hotel room of Katherine Phillips.

On July 13, 1965, the victim, Robert Gene Daniels, visited a bar known as the 216 Club on Main Street in Visalia where at about 11 p.m., he talked with the appellant and Katherine Phillips, and had several drinks with them. The victim had known the appellant for about five months and Katherine Phillips a somewhat shorter time, about three months. Previously Daniels and Katherine Phillips' husband had had an altercation eventuating in a fist fight. In their conversation, some reference was made to this former occasion, but the rather tense memory of the clash was soon replaced by other talk apparently friendly in nature. Appellant and Mrs. Phillips left the bar and went back to room 28 at the Larson Hotel where she was registered. Soon thereafter, a redheaded young man named Ernie Smith, a girl named Nancy, and another woman called Terry Bates, who had also been in the 216 Club, went to the Phillips' room, which was located on East Main Street in the southeast corner of the top floor of the hotel. A few minutes afterwards, Robert Gene Daniels also walked into the room; he had been invited casually to do so by the girl named Nancy. He sat down on a chair and later on the bed. The members of the informal party all had a series of alcoholic drinks. Apparently after some of the visitors had left, Daniels was hit on his right temple by Kathy Phillips with a half-gallon vodka bottle, knocking him to his knees and shattering the bottle. He was also hit a second time by the appellant from behind with what Daniels thought was another bottle. Mr. Burke, the hotel proprietor, who at the time was downstairs on the sidewalk, heard two loud thuds of about the same intensity coming from the upper floor. At the second blow, the victim fell to the floor and the appellant grabbed him by the left arm and started dragging him down the hall; Phillips asked his sister-in-law to help and the two of them each held Daniels by one of his wrists and pulled him on the floor to the head of the stairs where they rolled and kicked him down the stairway; they followed him down half way; appellant kicked him four times and the victim then rolled and bounced all the way to the bottom of the stairs where he got up and walked out to the sidewalk. Daniels lay down on the sidewalk, held his head in both hands, and suffered copious bleeding. Mr. Burke was still on the sidewalk in front of the hotel. He heard somebody tumbling down the stairs and then saw the complaining witness staggering out of the door with blood on his face and chest; the victim asked Mr. Burke to call the police and to get an ambu-

lance, which he did. Burke then went into the hotel and saw a trail of fresh blood on the stairway and through the upper hall from the head of the stairs to room 28.

Police Officer Ted Summerfield was attached to the California Highway Patrol at the time of the trial, but was a member of the Visalia police force on the night of the assault. He testified that early in the morning of July 14, 1965, he saw the victim lying on the sidewalk in the doorway of the Santa Fe Liquor store with his head toward the door and his feet thrust out toward the street. His head was lying in a pool of thick coagulated blood; his clothes, face, and hands were also bloody. He was conscious and talking with the police officer, he identified himself as Bob Daniels.

At the trial, before Summerfield testified, Robert Gene Daniels had already testified as follows: "I remember laying there and a police officer was talking to me, asking me what had happened, and I remember talking a little bit to him, told him I got hit. He asked me where and I told him. He asked me who it was and I told him."

It should be noted that this testimony was given without any objection, or motion to strike, on the part of the defendants.

Summerfield attempted in answer to a question to tell the court the substance of the conversation between him and the victim. The prosecution sought the admission of such evidence in the attempt to prove reasonable cause on the part of the officer to believe that a felony had been committed by the defendants.

Penal Code section 836, subdivision 3, provides as follows: "A peace officer may . . . without a warrant, arrest a person:

". . . . . . . . . . . .

"3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed."

Defense counsel objected on the ground that such testimony would be hearsay unless the defendants were present. Then, Officer Summerfield said as he was standing by the victim, he observed Ernie Smith, the redheaded man, and a woman walking west from the liquor store. He stopped Smith in the alley, talked to him, then went back to the hotel; in the meantime, two additional officers had arrived, and they followed a trail of blood from the sidewalk into the Larson Hotel and up the steps to room No. 28. They knocked on the door; light could be seen through the transom and through the crack between the floor and the bottom of the door; there was no

response; they called out—still no response; they sent for the manager, Mr. Burke, and asked for a passkey; he looked for one, then returned and advised them that there was no passkey which he could find, and the officers forced the door with the permission of the hotel manager. The defendants were not in the room.

Defense counsel objected at this point on the ground that anything that was obtained in the room was the result of an illegal search and therefore inadmissible. The court directed argument outside of the presence of the jury. After the jury returned, the prosecutor asked Officer Summerfield about the conversation he had with Daniels when the officer had first arrived on the scene.

Defense counsel again objected, saying that no proper foundation had been laid to show that either of the defendants was present during the conversation. The court then ruled that the testimony was admissible, but limited solely to the question of whether or not the officers had reasonable cause to break into the room in attempting to make an arrest; the jury was clearly instructed that it must not construe the evidence as showing who the attackers were. After this admonition by the court, Officer Summerfield started to answer prosecution questions when defense counsel again objected that this would be hearsay and the court intervened again and said, ''The objection is overruled and the evidence is admitted solely to show whether the officer had reasonable cause to forceably [sic] enter the premises in question, not as to the truth or falsity of the statement.''

Summerfield said that the victim told him that Gene Phillips and a girl by the name of Kathy had struck him. The officer also testified that earlier, about 12:30 a.m., he had passed the Larson Hotel and had seen Gene Phillips looking out of an upstairs window at himself and another officer on the street.

The prosecution asked Officer Summerfield what was found when they entered room 28. Again, counsel for the defendants objected on the ground that no proper foundation had been laid. The court overruled the objection and Summerfield testified that when they entered the room, they observed a bed in a mussed condition, and that there was a wadded-up sheet on the floor; he looked in the sheet and found a broken vodka bottle. The policeman then went out into the hallway and saw a window opening onto the roof east of room 28, which was closed but not locked. The officers climbed out on the roof, searched it, and found the defendants and Terry Bates

lying on the east side of the sky light at the northeast corner of the roof. The three were ordered to stand up and were then advised of their constitutional rights, and escorted back to room 28.

Mrs. Phillips there asserted, in a voluntary statement, that she was the one responsible as it was her room in which the altercation had taken place, and the appellant, Gene Phillips, denied that he was in the room at the time of the assault. Appellant Phillips had blood on his hand and on one of his feet, and he explained it by saying that he had cut himself with a piece of glass. All three were taken to the police station. En route to the county jail, Mrs. Phillips stated that she was glad this was a felony, because she was facing one to five years and they would drop the other misdemeanor charges against her. Eugene Phillips was not present at the time of the statement, and the court admonished the jury that the evidence was received only as against Kathy Phillips and not against appellant.

Phillips testified in his own behalf that on the night in question he was in the room with Kathy Phillips and Daniels, that they were drinking, that the victim and Kathy had an argument, and started wrestling, that he attempted to break it up, that Daniels tried to hit Kathy, and then appellant hit him, that Daniels fell on the vodka bottle, which had been broken earlier and was cut; at this point, Phillips claimed he and his sister-in-law said, ''We have to get him to a doctor''; that they took him down the hall and intended to go out of the hotel to locate a physician; however, at the top of the stairs, he testified that Daniels told them to get away from him and that he then tripped and fell down the stairs; then Kathy and Gene went back into the room where he stepped on a piece of glass and got cut. ██ On appeal after conviction, this court must accept the evidence of the prosecution and consider as proven all in the record that is favorable to the state and which was legitimately introduced.

██ Probable cause to make an arrest depends upon the circumstances of each case; the existence of justifying factors must be determined on the basis of the situation confronting the officer immediately before making the arrest; the court—not the officer or the jury—must decide whether the officer's belief of a right to arrest is based upon reasonable grounds. (Witkin, Cal. Criminal Procedure (1963) § 103, p. 102.) The determination is wholly one of law for the trial court. (*People v. Paul,* 147 Cal.App.2d 609, 619 [305 P.2d 996]; *People v. Holmes,* 237 Cal.App.2d 795, 797 [47 Cal.Rptr. 246].)

In *People* v. *Silvestri*, 150 Cal.App.2d 114 [309 P.2d 871], a conviction was reversed because the jury was instructed that it was for them to determine whether the officer acted reasonably; it was there held that the existence of probable cause to make the arrest should have been determined by the court, the instruction was prejudicial to defendant.

In this case, the court should have received the evidence complained of preliminarily; it consists of a statement of the victim to a law enforcement officer that ''Gene Phillips and a girl by the name of Kathy'' had struck him on the head; it was the court's duty to determine the admissibility of the evidence outside of the presence of the jury. (*People* v. *Gorg*, 45 Cal.2d 776, 780-781 [291 P.2d 469]; *People* v. *Holmes, supra*, 237 Cal.App.2d 795, 797; *People* v. *Lawrence*, 149 Cal.App.2d 435, 446-447 [308 P.2d 821]; *People* v. *Silvestri, supra*, 150 Cal.App.2d 114, 118; *People* v. *Dewson*, 150 Cal.App.2d 119, 127 [310 P.2d 162]; *People* v. *Ames*, 151 Cal.App.2d 714, 723 [312 P.2d 111]; *People* v. *Wozniak*, 235 Cal.App.2d 243, 257 [45 Cal.Rptr. 360].)

It is true that the court did hear the argument of counsel outside of the presence of the jury, but after calling the jurors back into the courtroom, the court simply overruled the objections and permitted the evidence. By ruling that the evidence was admissible, obviously the court decided the question. The ruling itself was a final determination by the court of the propriety of receiving the evidence for the restricted purpose.

The only question that remains is whether the mere fact that the jury heard this evidence, after the ruling of the court, would require a reversal of the judgment. Our considered answer is ''No.'' Entirely apart from what Daniels told Summerfield, the jury had ample evidence to justify conviction. The complaining witness gave sufficient evidence alone to warrant the verdicts, and the defendants both admitted on the stand that each of them had struck Daniels, although denying that bottles were used for the purpose. Furthermore, the trail of blood through the hallway up the stairs to the room of Mrs. Phillips, the apparent injuries to Daniels, and the broken vodka bottle which was found in room 28, also eloquently corroborated the evidence of the victim.

Appellant also argued that, as the entry of room 28 by the officers was not justified, the prosecution could not introduce what they found in the room, namely, the broken vodka bottle wrapped in the bed sheet.

A search without a warrant is reasonable when the officers enter in fresh pursuit of escaping felons to make an arrest. Having legitimately entered room 28 in fresh pursuit of the two members of the Phillips family, the officers could properly note, and use for evidence later, what was in plain view. (*People* v. *Roberts*, 47 Cal.2d 374, 378-380 [303 P.2d 721].)

This principle is approved in *People* v. *Smith*, 63 Cal.2d 779 [48 Cal.Rptr. 382, 409 P.2d 222], where Mr. Justice Mosk, speaking for the court, states at page 797: ". . . The law recognizes that fresh pursuit of a fleeing suspect who has committed a grave offense and remains dangerous to life and limb may constitute 'exceptional circumstances' sufficient to justify a search without a warrant. [Citing authorities.]"

The officers had reasonable cause to arrest appellant without a warrant, and the evidence obtained was properly admissible. We find no error in the record which would justify a reversal.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 17, 1967.