Paul I. ZUPAN, Plaintiff,

v.

Charles E. BROWN; Michael Robinson; Ronald Chun; Dennis Yen; Eddie Ylst, Warden; Deborah Star; Marisela Montes, Defendants.

No. C 95–00156 CRB.

United States District Court, N.D. California.

March 23, 1998.

Amitai Schwartz, Amitai Schwartz Law Offices, San Francisco, CA, for Plaintiff.

Kathleen A. Umrein, California State Atty. General's Office, Frances T. Grunder, Deputy Attorney Gen., San Francisco, CA, for Defendants.

## ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING IT IN PART

WILKEN, District Judge.

Defendants move for summary judgment. Plaintiff opposes. The matter was heard on December 5, 1997. Having considered all of the papers filed by the parties and oral argument on the motion, and for the reasons

stated below, the Court grants the motion in part and denies it in part.

## BACKGROUND

The Court described the facts of this case in detail in its Order of December 16, 1996, granting in part and denying in part Defendants' motion to dismiss. Order of December 16, 1996 at 1 through 5. Only the facts relevant to today's order will be included here. The claims that remain in the case are as follows: (1) Mr. Zupan's equal protection claim against Defendants Charles Brown, Michael Robinson, Ronald Chun, Dennis Yen, Eddie Ylst and Marisela Montes; (2) his unlawful arrest claim against Defendants Brown and Yen; and (3) his unlawful search claim against Defendants Brown and Robinson.

Defendants move for summary judgment, arguing that Mr. Zupan's claims regarding his arrest and search are not cognizable pursuant to *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), because, if true, they would necessarily imply the invalidity of the revocation of his parole. Defendants also argue that Mr. Zupan's arrest and search were lawful because they were each supported by a reasonable belief that Mr. Zupan had violated his parole. Defendants argue further that Mr. Zupan's equal protection claim fails because he has not shown that he is a member of a protected class and has received disparate treatment. Finally, Defendants assert that they are entitled to qualified immunity as to Mr. Zupan's claims because their conduct did not violate clearly established law.

Mr. Zupan argues that recent Supreme Court authority indicates that *Heck* does not bar claims by a plaintiff who is unable to petition for habeas corpus relief because he is no longer in custody. He also argues that triable issues of fact exist concerning whether the search and arrest were supported by a reasonable belief that he had violated parole. He argues further that his equal protection claim is viable because Defendants punished him for his inability to pay restitution. In addition, Mr. Zupan argues that Defendants are not shielded by qualified immunity.

## DISCUSSION

### I. Legal Standard

Summary judgment is properly granted when no genuine issues of material fact remain, or when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1288–89 (9th Cir.1987).

The moving party bears the burden of showing that there is no material factual dispute. The Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Eisenberg*, 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### II. Claims that arose before the October 27, 1993 arrest

Defendants assert that a number of Mr. Zupan's allegations relate to conduct that occurred before his October 23, 1993 arrest. This includes his allegations that, prior to his arrest, he was harassed by parole officials in San Francisco, that he was denied a transfer of parole to Washington, that he was denied permission to travel there, and that Defendant Ylst failed to train and supervise parole officials. Defendants assert that the statute of limitations bars any claims for conduct arising from these allegations because the tolling provision under California law that applies to prisoners does not apply to claims that arise when the prisoner is not in custody.

Mr. Zupan asserts that he does not seek damages for any events that occurred before his arrest on October 27, 1993 but raises this conduct only because it provides the background of the case and sheds light on Defendants' motivations. Mr. Zupan appears to concede that the one-year statute of limita-

tions bars him from basing a claim on any of the conduct that Defendants assert occurred prior to his arrest on October 27, 1993. Because Mr. Zupan has not raised any argument or presented facts to the contrary, the Court grants Defendants summary judgment as to their liability for any conduct that occurred before October 27, 1993.

III.   The Arrest and Search Claims

A.   *Heck v. Humphrey*

Defendants argue that *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), bars Mr. Zupan from bringing claims based on his parole violation arrest and search. In *Heck*, the Supreme Court held that, in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other injuries caused by actions whose unlawfulness would render the conviction or imprisonment invalid,

> a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id.* at pp. 486–487, 114 S.Ct. 2364 (emphasis in original) (footnote omitted). The *Heck* Court held further that when a State prisoner seeks damages in a § 1983 suit, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at p. 487, 114 S.Ct. 2364. If the district court determines, however, that the plaintiff's action would not necessarily demonstrate the invalidity of the criminal judgment against the plaintiff, it should allow the § 1983 action to proceed. *Id.*

■ The Fifth Circuit in *McGrew v. Texas Board of Pardons and Paroles*, 47 F.3d 158 (5th Cir.1995), held that an action attacking the validity of parole revocation proceedings "calls into question the fact and duration of confinement," and must therefore satisfy the requirements of *Heck* before proceeding. *Id.* at 161; *see Butterfield v. Bail*, 120 F.3d 1023 (9th Cir.1997) (applying *Heck* to procedure in which parole was denied). Recently, the Supreme Court assumed, without explicitly deciding, that *Heck* applied to parole revocations. *See Spencer v. Kemna,* —— U.S. ——, 118 S.Ct. 978, 989, 140 L.Ed.2d 43 (1998). Based on these authorities, and knowing of none to the contrary, the Court finds that the requirements of *Heck* apply with equal force to parole revocations as to convictions.

Defendants argue that *Heck* bars Mr. Zupan's damages claims based on the search and arrest that led to his reincarceration as a parole violator. Defendants assert that a judgment in Mr. Zupan's favor would necessarily imply the invalidity of the revocation of his parole and that this revocation has never been declared invalid or called into question by the issuance of a writ of habeas corpus.

Mr. Zupan concedes that he did not file a habeas corpus petition challenging the parole revocation proceedings of December 3, 1993. He argues, however, that in *Spencer*, the Supreme Court recently indicated that *Heck* does not bar a § 1983 claim based on unconstitutional confinement if the plaintiff is, like him, unable to petition for habeas corpus relief from confinement.

1.   *Heck* after *Spencer v. Kemna*

In *Spencer*, Randy Spencer filed a habeas corpus petition to invalidate an order revoking his parole. After the petition was filed but before the district court ruled upon it, Mr. Spencer completed the term of imprisonment underlying his parole revocation. The Supreme Court, therefore, addressed the question of whether the expiration of his sentence mooted his petition. Specifically, the Court analyzed whether Mr. Spencer's petition was moot "because it no longer presented a case or controversy under Article III, § 2 of the Constitution." *Spencer*, —— U.S. at ——, 118 S.Ct. 978, 140 L.Ed.2d 43.

The Court pointed out that an incarcerated convict's challenge to the validity of his or

her conviction always satisfies the case-or-controversy requirement because the incarceration constitutes a concrete injury that is redressable by the invalidation of the conviction. *Id.* Mr. Spencer did not challenge his convictions for theft and burglary, he argued only that the termination of his parole status was wrongful. *Id.* The Court stated, "The reincarceration that he incurred as a result of that action is now over, and cannot be undone. Subsistence of the suit requires, therefore, that continuing 'collateral consequences' of the parole revocation be either proven or presumed." *Id.* The Court concluded that collateral consequences could not be presumed and that Mr. Spencer failed to prove any collateral consequences of his parole revocation. *Id.* at —— – ——, 118 S.Ct. 978.

Mr. Spencer raised an additional argument why he should be allowed to pursue habeas corpus relief. He argued that, unless he were allowed to establish the invalidity of his parole revocation through a habeas petition, *Heck* would bar him from pursuing a § 1983 damages claim based on the revocation. Justice Scalia rejected this argument: "This is a great *non sequitur*, unless one believes (as we do not) that a § 1983 action for damages must always and everywhere be available." *Id.* at ——, 118 S.Ct. 978.

Although Justice Scalia wrote for the Court and for the majority in most of his *Spencer* opinion, the concurring opinions of Justices Souter and Ginsburg and the dissenting opinion of Justice Stevens indicate that Justice Scalia's position on *Heck* was not joined by the majority. Instead, four Justices indicated their agreement with Justice Souter's position, first outlined in his concurring opinion in *Heck* and revisited in his *Spencer* concurrence.

In *Heck*, Justice Souter concurred in the judgment, but took issue with the majority opinion to the extent that it could be read to prevent certain individuals who are not in custody under § 2254 from asserting § 1983 damages claim. *Heck*, 512 U.S. at 502–503, 114 S.Ct. 2364. It would be "an untoward result," according to Justice Souter, if people who were only fined, or who have completed short terms of imprisonment, probation or parole, or who, through no fault of their own, discover a constitutional violation after the expiration of their sentences, were required to show the prior invalidation of their sentences or convictions in order to bring a § 1983 damages claim. *Id.* at 500, 114 S.Ct. 2364. Such individuals are not in custody and therefore cannot invoke federal habeas jurisdiction. *Id.* Justice Souter asserted, therefore, that *Heck* should be read to require only § 1983 plaintiffs who are in custody to demonstrate the prior invalidation of their sentences or convictions. *Id.* People who are not in custody and, therefore, legally unable to bring a habeas petition, would not have to meet such a requirement. *Id.* at 503, 114 S.Ct. 2364. Justice Souter asserted, therefore, that the *Heck* majority opinion should not be read to bar such people from pursuing a § 1983 claim. *Id.*

Justice Souter repeated this analysis in his concurring opinion in *Spencer:*

> *Heck* did not hold that a released prisoner in Spencer's circumstances is out of court on a § 1983 claim, and for reasons explained in my *Heck* concurrence, it would be unsound to read either *Heck* or the habeas statute as requiring any such result. For all that appears here, then, Spencer is free to bring a § 1983 action, and his corresponding argument for continuing habeas standing falls accordingly.

*Spencer*, —— U.S. at ——, 118 S.Ct. 978, 989, 140 L.Ed.2d 43 (Souter, J., concurring). Justice Souter reaffirmed that he reads the Court's *Heck* opinion as subjecting only inmates asserting § 1983 damages claims for unconstitutional conviction or confinement to a "favorable-termination requirement," that is, a requirement that the conviction or confinement had been previously overturned or invalidated. *Id.* He also reasserted his opinion that barring 1983 suits by plaintiffs who are not in custody would lead to an unfair result:

> a given claim for relief from unconstitutional injury would be placed beyond the scope of § 1983 if brought by a convict free of custody (as, in this case, following service of a full term of imprisonment), when exactly the same claim could be redressed if brought by a former prisoner who had

succeeded in cutting his custody short through habeas.

*Id.* A broad application of the favorable-termination requirement would also render § 1983 relief unavailable to a convict who was fined or sentenced to a term too short to permit even expeditious litigation before expiration of the sentence. *Id.* at n.* (citing *Heck,* 512 U.S. at 500, 114 S.Ct. 2364 (Souter, J., concurring in the judgment)).

According to Justice Souter, the better view is that a former prisoner who is no longer in custody may bring a § 1983 damages claim asserting the unconstitutionality of a conviction or confinement "without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." *Id.* at ———, 118 S.Ct. 978.

Justice Souter's position on *Heck* now appears to have the support of a majority of the Court. In *Heck,* Justice Souter's opinion concurring in the judgment was joined by Justices O'Connor, Blackmun and Stevens, while Justice Scalia's majority opinion was joined by Justices Rehnquist, Kennedy, Thomas, and Ginsburg. In *Spencer,* however, the balance shifted. Although Justice Scalia's majority opinion in *Spencer* was joined by Justices Thomas, Rehnquist, Kennedy and Ginsburg, Justice Ginsburg stated in a separate concurrence that she had changed her position on *Heck:* "I have come to agree with Justice Souter's reasoning: Individuals without recourse to the habeas statute because they are not 'in custody' (people merely fined or whose sentences have been fully served, for example) fit within § 1983's 'broad reach.'" *Id.* at ———, 118 S.Ct. 978 (Ginsburg, J., concurring). In addition, Justice Stevens, who joined Justice Souter's *Heck* concurrence, indicated in his *Spencer* dissent that he continues to agree with Justice Souter's position regarding § 1983: "Given the Court's holding that petitioner does not have a remedy under the habeas statute, it is perfectly clear, as Justice Souter explains, that he may bring an action under § 1983." *Id.* at ———, n. 8, 118 S.Ct. 978 (Stevens, J. dissenting).[1]

Justice Souter's concurrence in *Spencer* was joined by Justices O'Connor, Ginsburg and Breyer. Because Justice Stevens also indicated his agreement with Justice Souter regarding the ability of the petitioner to bring a § 1983 action, it appears that Justice Souter's reading of *Heck* is approved by a majority of the Court.

■ The Court is persuaded by Justice Souter's reasoning in *Spencer* and *Heck.* It is unfair to require a person who is legally precluded from challenging his or her conviction or sentence on habeas grounds to demonstrate that the conviction or sentence had been overturned or invalidated. The Court finds, therefore, that *Heck*'s requirement that a § 1983 plaintiff must prove that his or her conviction or sentence has been reversed or invalidated does not apply to a § 1983 plaintiff who is no longer in custody and who is unable as a matter of law to bring a habeas petition to challenge his or her conviction or sentence.

2. Application of *Spencer* to Mr. Zupan

■ Mr. Zupan asserts that *Heck* does not bar his § 1983 claims based on the revocation of his parole because he is no longer in custody and cannot petition for habeas corpus relief from the confinement. The Court agrees for two reasons. First, because Mr. Zupan is no longer "in custody," he can no longer bring a habeas corpus petition challenging his parole revocation. *See* 28 U.S.C. § 2254. For the reasons discussed above, Mr. Zupan may therefore bring his § 1983 action concerning the revocation of his parole without satisfying the favorable-termination requirement of *Heck.*

Second, Mr. Zupan's parole revocation resulted in a "term too short to permit even expeditious litigation without continuances before expiration of the sentence." *Spencer,* ——— U.S. at ———, 118 S.Ct. 978, 140 L.Ed.2d 43, n.* (Souter, J., concurring). After Mr. Zupan's parole was revoked, he was incarcerated for only six weeks, from December 3, 1993 to January 15, 1994. From January 15, 1994, when he was re-paroled, until December 20, 1996, when he was discharged from

---

**1.** In *Spencer,* Justice Stevens dissented on     grounds unrelated to *Heck.*

parole, he was still "in custody" for the purposes of § 2254, but only to challenge actions that led to his underlying conviction and sentence. Once he was released from his reincarceration on January 15, 1994, however, the incarceration that resulted from his parole revocation had ended. He could no longer file a habeas corpus petition challenging the actions that led to the parole revocation, that is, the allegedly unlawful search and arrest. *See Spencer,* —— U.S. at ——, 118 S.Ct. 978, 140 L.Ed.2d 43; *Steinberg v. Police Court of Albany, N. Y.,* 610 F.2d 449, 453 (6th Cir.1979) (to maintain a habeas action, petitioner must be "in custody" and that custody must be the result of respondent's action from which petitioner seeks relief); *Brown v. Wainwright,* 447 F.2d 980, 980 (5th Cir.1971) (court lacks jurisdiction when inmate petitioner is not in custody under the sentence he is attacking). Mr. Zupan, therefore, had only six weeks in which to file a habeas corpus petition challenging Defendants' actions that led to the revocation of his parole.

As indicated above, *Heck* should not be read to bar a claim by a § 1983 plaintiff like Mr. Zupan who has completed a short term of imprisonment on a parole revocation and cannot, as a matter of law, challenge his imprisonment pursuant to § 2254. *See Heck,* 512 U.S. at 500, 114 S.Ct. 2364 (Souter, J., concurring in the judgment); *Spencer,* —— U.S. at ——, 118 S.Ct. 978, 140 L.Ed.2d 43 (Souter, J., concurring). The Court finds, therefore, that *Heck* does not bar Mr. Zupan from asserting a § 1983 claim of constitutional injury arising out of his parole revocation.

Defendants argue that the view of *Heck* that Justice Souter expounded in his concurrence is dicta because the issue in *Spencer* was whether the petitioner could seek habeas relief, not whether he could assert a § 1983 cause of action. Regardless of whether *Spencer* is binding authority on the issue of whether *Heck* bars a § 1983 claim, there is no binding authority directly to the contrary, and the Court finds Justice Souter's concurrences in *Heck* and *Spencer* persuasive. It is also evident from Justice Ginsburg's concurrence and Justice Stevens' dissent that a majority of the Supreme Court similarly finds Justice Souter's reading of *Heck* persuasive.

Second, Defendants argue that the rationale of Justice Souter's concurring opinion does not advance Mr. Zupan's case. Defendants assert that, unlike the released prisoners described by Justice Souter who were unable to bring a habeas corpus petitions, Mr. Zupan could have pursued habeas relief until he was discharged from parole on December 20, 1996. As indicated above, however, Mr. Zupan could not have filed a habeas petition regarding the revocation of his parole after he was released from prison on January 15, 1995. Even though he was he was on parole until December 20, 1996, and therefore in custody for certain purposes, he was not in custody for the purposes of his parole revocation after January 15, 1995.

The Court finds, therefore, that *Heck* does not bar Mr. Zupan from pursuing his § 1983 claims concerning the allegedly unlawful search and seizure that led to his parole revocation.

**B. The propriety of Mr. Zupan's arrest**

■ Defendants argue that, regardless of whether *Heck* bars Mr. Zupan's claims, his claim concerning his arrest fails because the arrest was constitutional as a matter of law. According to Defendants, the arrest was supported by a reasonable belief that he was in violation of parole. Under both California and federal law, an arrest of a parolee is lawful if a parole officer reasonably believes a parolee is in violation of parole. *United States v. Rabb,* 752 F.2d 1320, 1324 (9th Cir.1984); *see People v. Villareal,* 262 Cal. App.2d 438, 447, 68 Cal.Rptr. 610 (1968) (arrest of parolee for parole violation does not require probable cause).

Mr. Zupan asserts that Defendants arrested him and searched his house in order to coerce him to pay restitution. The Supreme Court has held, however, that an otherwise lawful arrest is not rendered unlawful because the agents have an ulterior motive. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). The Supreme Court held further that the subjective intentions of officers play no part in ordinary, probable-cause Fourth Amendment

analysis. *Id.* The inquiry turns on whether the circumstances, when viewed objectively, justify the arrest at issue. *Id.*

Defendants assert that the circumstances, when viewed objectively, indicate that the arrest was justified. Defendants assert that their evidence indicates that, at the time of the arrest, Mr. Brown and Mr. Yen had a reasonable suspicion that Mr. Zupan had violated parole in three ways: (1) by failing to move to San Francisco as instructed, (2) by changing residences without the prior approval of his agent of record, and (3) by failing to submit an adequate plan of restitution. Defendants present evidence that Defendants Yen, Brown, and Robinson arrested Mr. Zupan because they believed that he had changed residences without the permission of his agent of record and because he had not returned to San Francisco by October 25, 1993, as Mr. Brown had instructed. They present evidence that Mr. Zupan had not returned to San Francisco by October 25, 1993. They also present evidence that Mr. Yen was not aware of any arrangements made between Mr. Zupan and parole agent Michael Ferretti concerning Mr. Zupan's change in residence, or that Mr. Brown had allegedly discussed with Mr. Zupan the prospect of allowing him to stay in Marin County until October 27, 1997. Finally, Defendants point out that the parole revocation hearing officer found good cause that Mr. Zupan had violated his parole by failing to return to San Francisco County as he had been instructed.

Mr. Zupan has presented evidence, however, indicating that a triable issue of fact exists concerning each of his alleged violations of parole. First, Mr. Zupan presents evidence that he had been given conflicting instructions regarding his move to San Francisco. Mr. Zupan's evidence indicates that, although Defendant Brown told him that the regional parole office was going to deny his transfer and that he would have to move back to San Francisco by October 7, 1993, Mr. Brown later told him that he did not have to move back by that date. Declaration of Paul Zupan at ¶ 10. According to Mr. Zupan, Mr. Brown told him on October 21, 1993 that he would have to move to San Francisco by October 25, 1993. Mr. Zupan's evidence indicates, however, that he spoke to Mr. Brown on October 25, 1993 and told him that he would not be able to move to San Francisco by that day. Zupan Decl. at ¶ 12. Mr. Zupan states in his declaration that Mr. Brown told him that they could discuss the matter at their scheduled meeting on October 27, 1993. *Id.*

▮ When viewed in the light most favorable to Mr. Zupan, this evidence indicates that Mr. Brown gave Mr. Zupan implied permission not to move to San Francisco despite earlier instructions that he do so. Such evidence creates a triable issue regarding whether it was reasonable for Mr. Brown to suspect that Mr. Zupan was in violation of parole for failing to move to San Francisco as instructed. If Mr. Zupan had permission from his parole officer to stay in Marin, he would not be in violation of his parole for failing to move to San Francisco.

Second, evidence in the record indicates that Mr. Zupan was given permission to live in Marin temporarily, which permission was extended several times while his transfer was being considered. Defendants' Statement of Undisputed Material Facts, ¶ 4. Mr. Zupan presents evidence that his parole agent, Michael Ferretti, had given Mr. Zupan permission to rent an apartment in Marin County, had told Mr. Zupan he would approve the transfer, and had signed a document indicating his approval of the transfer. Deposition of Michael Ferretti at 26–28 and Ex. 8. Mr. Zupan also presents evidence that Mr. Brown, his agent of record, gave him permission to stay in Marin, at least until October 27. The evidence in the record, therefore, presents a triable issue of fact regarding whether Mr. Zupan had permission to change his residence to Marin.

Third, Mr. Zupan presents evidence that he submitted plans for the payment of restitution, one on August 18, 1993 and one on October 5, 1997. Furthermore, Mr. Yen testified that he ordered Mr. Zupan's arrest only because of his residence change and his alleged failure to move to San Francisco. Yen Depo. at p. 90. Nowhere in Mr. Yen's deposition does he mention that he ordered the arrest because of Mr. Zupan's failure to submit plans for the payment of restitution.

When viewed in the light most favorable to Mr. Zupan, this evidence presents a triable issue of fact regarding whether Mr. Yen and Mr. Brown arrested him for failing to submit a restitution plan and whether they had a reasonable basis for believing that he failed to do so.

Because there are triable issues of fact regarding each of the alleged bases for Mr. Zupan's arrest, the Court denies Defendants' summary judgment motion as to the arrest.

### C. The propriety of the search of Mr. Zupan's residence

Defendants assert that the parole search of Mr. Zupan's home was lawful and constitutional as a matter of law because the officers involved in the search, Mr. Brown and Defendant Michael Robinson, had a reasonable suspicion that Mr. Zupan had violated parole. Defendants assert that the search was lawful because of the information they possessed regarding Mr. Zupan's suspected parole violations, mentioned above. Defendants assert that Messrs. Brown and Robinson searched Mr. Zupan's home to look for evidence that he had changed residences unlawfully and failed to move when instructed to do so. As indicated above, however, Mr. Zupan has presented triable issues of fact regarding whether Defendants had reasonable suspicions that he violated parole.

■ In addition, Mr. Brown stated in his deposition that he also searched the house because he suspected Mr. Zupan of using drugs. Brown Depo at 187–188. Mr. Brown asserts that he harbored this suspicion because each time he saw Mr. Zupan, Mr. Zupan was dressed in jeans and a polo shirt and had a "sort of disheveled" appearance. *Id.* Mr. Brown gave no further reason for believing that Mr. Zupan was using drugs. The Court finds that these facts alone do not support a reasonable suspicion of drug use.

Mr. Robinson testified that he did not know of any specific reason why the search was being conducted. Robinson Depo. at pp. 76–77.

■ The Court finds that there are triable issues of fact regarding whether the search was based on a reasonable suspicion that Mr. Zupan had violated his parole. The Court, therefore, denies Defendants' summary judgment motion as to the search of Mr. Zupan's residence.

### D. Qualified immunity

■■ Defendants assert that they are entitled to qualified immunity with regard to Mr. Zupan's unlawful search and arrest claims. Qualified immunity protects "government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "[R]egardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir.1991).

The Ninth Circuit has held that the qualified immunity test is a two-step inquiry. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871–72 (9th Cir.1993). First, the court must determine whether the law governing the official's conduct was clearly established. If so, the court must then determine whether, under that law, a reasonable official could have believed his or her conduct was lawful. *See id.*

■ Mr. Zupan's unlawful search and arrest claims are based on his Fourth Amendment rights to be free from unreasonable searches and seizures. As indicated in section III(B), above, an arrest of a parolee is lawful if a parole officer reasonably believes a parolee is in violation of his parole. *Rabb,* 752 F.2d at 1324. Mr. Zupan has presented a triable issue of fact regarding whether Defendants had a reasonable belief that he was in violation of parole. If Defendants had no reasonable suspicion that Mr. Zupan was in violation of parole, they did not have a basis for arresting him. In such a case, their arrest of him would violate clearly established law under the Fourth Amendment. Because Defendants have not established as

a matter of law that they had a reasonable suspicion that Mr. Zupan was in violation of parole, the Court cannot conclude as a matter of law that Defendants are entitled to qualified immunity for these actions.

■ Similarly, the Fourth Amendment provides that persons are to be free from unreasonable searches. The Ninth Circuit has noted that "a search by a parole officer has been held invalid where it was for the purpose of harassing or oppressing the parolee." *Latta v. Fitzharris,* 521 F.2d 246, 248 (9th Cir.1975) (en banc). A search is valid, however, when the parole officer reasonably believes that it is necessary for the performance of his or her duties. *Id.* at 250. As indicated in part III(C), above, however, Mr. Zupan has presented a triable issue of fact whether Defendants reasonably believed that the search was necessary. He has also presented evidence that Defendants conducted the search to harass him. Because of such factual disputes, the Court denies Defendants, claim for qualified immunity to claims based on their search of Mr. Zupan's home.

IV. Equal Protection

In Mr. Zupan's second claim for relief, he alleges that Defendants conditioned his parole on the payment of restitution to his victims without regard to whether or not he had the financial ability to pay such restitution. He alleges that Defendants arrested him and searched his house, initiated revocation proceedings against him, and denied his travel and residence requests, all because of his inability to pay restitution. He argues that Defendants, in doing so without inquiring into his financial ability to pay restitution, violated his equal protection rights. Mr. Zupan relies on *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), for this proposition.

A. *Bearden v. Georgia*

In *Bearden,* the Supreme Court addressed the question of whether the Equal Protection Clause of the Fourteenth Amendment prohibited a State from revoking an indigent defendant's probation for failing to pay a fine and restitution. Danny Bearden plead guilty to burglary and receiving stolen property.

The State trial court did not enter a judgment of guilt, but sentenced Mr. Bearden to probation on the condition that he pay a $500 fine and $250 in restitution. Despite repeated efforts, however, Mr. Bearden was unable to find work. Before his fine payment was due, he notified the probation office that his restitution and fine payment was going to be late. The State then filed a petition to revoke his probation due to his failure to pay. After a hearing, the trial court revoked Mr. Bearden's probation, entered judgment and sentenced him to prison. The record of the hearing indicated that Mr. Bearden had no assets or income and had been unable to find work despite repeated efforts. The Georgia Court of Appeals rejected Mr. Bearden's claim that imprisoning him for his inability to pay the fine violated the Equal Protection Clause. The Georgia Supreme Court denied review.

The United States Supreme Court reversed. *Bearden,* 461 U.S. at 674, 103 S.Ct. 2064. The Court began its analysis by discussing cases indicating the Court's sensitivity to the treatment of indigents in criminal cases. *Id.* at 665, 103 S.Ct. 2064. The Court noted that in *Griffin v. Illinois,* 351 U.S. 12, 19, 76 S.Ct. 585, 100 L.Ed. 891 (1956), Justice Black stated, "There can be no equal justice where the kind of trial a man gets depends on the amount of money he has." The Court noted that this principle of equal justice had been applied in numerous contexts. *Bearden,* 461 U.S. at 664, 103 S.Ct. 2064 (citing *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)) (indigent entitled to counsel on appeal); *Roberts v. LaVallee,* 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967) (indigent entitled to free transcript of preliminary hearing for use at trial); *Mayer v. Chicago,* 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971) (indigent cannot be denied an adequate record to appeal conviction); *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971).

The Court based its decision on *Williams* and *Tate.* In both cases, the Supreme Court had found that a prisoner could not be treated differently solely because of indigency.

In *Williams*, 399 U.S. at 241–242, 90 S.Ct. 2018, the Court held that a State could not subject a convicted defendant to a period of imprisonment beyond the statutory maximum solely because the defendant was too poor to pay a fine. *See Bearden*, 461 U.S. at 667, 103 S.Ct. 2064 (citing *Williams*, 399 U.S. at 241–42, 90 S.Ct. 2018). In *Tate*, the statutory penalty was only a fine. The Court held that the State could not impose a fine as a sentence and then automatically convert it into a jail term solely because of the defendant's indigency and inability to pay. *See Bearden*, 461 U.S. at 664, 103 S.Ct. 2064 (citing *Tate*, 401 U.S. at 398, 91 S.Ct. 668).

The Supreme Court concluded that, under *Williams* and *Tate*, if the State determined a fine or restitution to be the appropriate penalty for the crime, it could not later imprison a person solely because he or she lacked the resources to pay it. 461 U.S. at 667–68, 103 S.Ct. 2064. The Court noted that in both *Williams* and *Tate*, it had carefully distinguished this substantive limitation on the State's ability to imprison indigents

> from the situation where a defendant was at fault in failing to pay the fine. As the Court made clear in *Williams*, "nothing in our decision today precludes imprisonment for willful refusal to pay a fine or court costs." Likewise in *Tate*, the Court "emphasize[d] that our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so."

*Bearden*, 461 U.S. at 668, 103 S.Ct. 2064 (quoting *Williams*, 399 U.S. at 242, n. 19, 90 S.Ct. 2018; *Tate*, 401 U.S. at 400, 91 S.Ct. 668). The Court held that if the probationer made all reasonable efforts to acquire the resources to pay, but was still unable to do so, it was fundamentally unfair to revoke his probation without considering whether alternative methods of punishment were available. *Id.* 91 S.Ct. at pp. 668–69. The Court held that if a court failed to consider such alternative methods, and the probationer was thereby deprived of his conditional freedom simply

because he could not pay restitution through no fault of his own, such a deprivation would violate the probationer's equal protection rights. *Id.* 91 S.Ct. at 672.

**B. Application of *Bearden* to Mr. Zupan's case**

Central to the Court's analysis in *Bearden* was Mr. Bearden's indigency. The Court began its analysis by discussing the Court's sensitive treatment of indigents, based its legal analysis on *Tate* and *Williams*, both of which dealt with imprisonment of indigents, and, in applying the facts of the case, indicated that Mr. Bearden had presented testimony at his revocation hearing about his lack of income and assets, and his repeated efforts to obtain work.

Mr. Zupan argues that, like the petitioners in *Bearden*, *Williams*, and *Tate*, he was punished by Defendants here for his indigency. He asserts that Defendants subjected him to harassment and imprisonment because of his financial inability to pay restitution, thereby violating his equal protection rights.

Defendants assert that they are entitled to judgment as a matter of law on Mr. Zupan's equal protection claim because Mr. Zupan is not indigent and because they are entitled to qualified immunity. For the reasons stated below, the Court finds that Defendants are entitled to summary judgment on both grounds.

**1. Indigency**

Defendants present substantial evidence countering Mr. Zupan's assertion that he was indigent. Mr. Zupan admitted in his deposition that between 1991 and 1993, he spent between $25,000 and $40,000 outfitting his 40–foot yacht and that he sold this yacht in May, 1993 for $25,000. Declaration of Frances Grunder, Ex. A at pp. 65–68. Defendants indicate that Mr. Zupan earned $14,500 in 1994,[2] $40,000 in 1995, and $55,000 in 1996. Mr. Zupan also contributed $5,000 to his retirement accounts in 1995 and $9,000 in 1996. Defendants present evidence indicating that Mr. Zupan was promoted in Septem-

---

**2.** Mr. Zupan was incarcerated from December 1, 1992 to August 16, 1993, when he was released on parole.

ber, 1996 and given an 11% raise, bringing his salary to $60,000. Defendants' evidence indicates further that during the time that Mr. Zupan and his wife lived in Marin, his wife paid his expenses. Declaration of Frances Grunder, Exh. G at p. 12.

Mr. Zupan does not deny that he earned the amounts asserted by Defendants in 1994, 1995 and 1996; nor does he deny that be made a total of $14,000 in contributions to his retirement accounts during 1995 and 1996 while he still owed restitution. At oral argument, Mr. Zupan's counsel asserted that Mr. Zupan had insufficient money to pay more restitution because he spent his money on "necessities," but was unable to explain how adding to his retirement accounts or outfitting his yacht constituted a necessities.

Mr. Zupan points to evidence indicating that, after an extensive investigation of Mr. Zupan's financial status conducted by Robert Martinez, a CDC investigator, Mr. Martinez concluded that Mr. Zupan did not have any hidden assets. Supplemental Declaration of Dennis Farias, Exh. C, at p. 35. Mr. Martinez also concluded that Mr. Zupan had made a good faith effort at paying restitution to his victims. *Id.* at p. 36.

■ Based on the record as it now stands, however, the Court finds that Mr. Zupan has not created a triable issue of fact regarding his alleged indigency. Mr. Zupan is unlike the defendant in *Bearden,* who had no income or assets, *Bearden,* 461 U.S. at 663, 103 S.Ct. 2064, the defendant in *Tate,* who the parties stipulated was poverty-stricken and who earned between $25 and $60 a week in casual employment, *Tate,* 401 U.S. at 396, n. 1, and the defendant in *Williams,* who the parties stipulated was indigent and who was unable to post bail of $2,000.[3] Here, the record indicates that Mr. Zupan had the financial ability to pay a greater amount in restitution but that he failed to do so. His situation is distinguishable, therefore, from *Bearden,* in which Mr.

Bearden was imprisoned solely because he lacked the resources to pay his fine and restitution. *Bearden,* 461 U.S. at 667–68, 103 S.Ct. 2064.

*Bearden* specifically held that although it was a violation of equal protection to imprison an indigent solely because of an inability to pay, " 'our holding today does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so.' " *Id.* at 668, 103 S.Ct. 2064 (quoting *Tate,* 401 U.S. at 400, 91 S.Ct. 668); *see also, Williams,* 399 U.S. at 242, n. 19, 90 S.Ct. 2018 ("nothing in our decision today precludes imprisonment for willful refusal to pay a fine or court costs.").

The Court finds, therefore, that Mr. Zupan has failed to present a triable issue of fact that he was indigent or that he was financially unable to pay restitution. The Court, therefore, grants summary judgment for Defendants on Mr. Zupan's equal protection claim.

### 2. Qualified immunity

Alternatively, Defendants assert that they are entitled to qualified immunity on Mr. Zupan's equal protection claims as well as his claims for his allegedly unlawful search and arrest. Mr. Zupan asserts that Defendants violated his equal protection rights by arresting him and searching his house, initiating revocation proceedings against him, and denying his travel and residence requests. Mr. Zupan alleges that Defendants subjected him to such treatment because of his inability to pay restitution. He asserts that under *Bearden, Williams* and *Tate,* it was clearly established law that the State could not arrest him, search his residence, or initiate parole revocation proceedings against him in an attempt to extract restitution from him without regard for his ability to pay.

**3.** Mr. Zupan also relies on *Douglas,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, which held that denying counsel on appeal to indigents violated equal protection, and *In re Antazo,* 3 Cal.3d 100, 89 Cal.Rptr. 255, 473 P.2d 999 (1970), which held that an indigent cannot be imprisoned because of his or her inability to pay a fine. In

*Douglas,* the Court stated that petitioners were denied the assistance of counsel on appeal "even though it plainly appeared they were indigents." 372 U.S. at 354, 83 S.Ct. 814. In *In re Antazo,* neither party disputed the defendant's indigency. 3 Cal.3d at 115–116, 89 Cal.Rptr. 255, 473 P.2d 999.

As indicated above, however, *Bearden, Williams* and *Tate* held only that such coercive treatment violates the Equal Protection Clause only if the defendant is indigent. Nothing in these cases precludes State officials from attempting to extract payments from a parolee who has the financial ability to pay, but who fails to do so. Mr. Zupan has failed to raise a triable issue of fact regarding his alleged financial inability to pay restitution. The Court cannot conclude, therefore, that the law governing the officials' conduct was clearly established. A reasonable official could conclude that nothing in *Bearden, Williams* or *Tate* established that it would violate Mr. Zupan's equal protection rights to attempt to extract restitution from him.

Furthermore, the *Bearden* rationale applies only to parole revocation for failure to pay. *Williams* and *Tate* were similarly related to the imprisonment of indigents for failure to pay a fine. Mr. Zupan has not cited any authority, and the Court knows of none, in which a court established that State officials could not take actions short of imprisonment to coerce a probationer to pay restitution. The Ninth Circuit has held that parolees have no constitutionally protected interest in interstate travel. *Bagley v. Harvey,* 718 F.2d 921, 924 (9th Cir.1983). A judge in the Northern District of California has held similarly that there is no federal constitutional right to be paroled in a particular location. *Kevakian v. Kennedy,* 1995 WL 7938 (N.D.Cal.1995) (Ware, J.).

■■■ There does not, therefore, appear to be clearly established law preventing parole officials from using travel and residence requests to coerce a parolee to pay restitution. The Court finds that a reasonable official could have believed that his conduct was lawful under the law at the time of the challenged conduct.

The Court finds, therefore that Defendants are entitled to summary judgment on Mr. Zupan's equal protection claims on either of two bases: (1) Mr. Zupan failed to present a triable issue of fact that he was indigent; (2) Defendants are entitled to qualified immunity on Mr. Zupan's equal protection claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Docket no. 95) is granted as to Mr. Zupan's equal protection claims and denied as to his claims for unlawful search and arrest.